IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re MALLINCKRODT PLC, *et al*., | : | Chapter 11 |
| | : | Bankr. Case No. 20-12522-JTD |
| Debtors. | : | (Jointly Administered) |
| | : | |
| CITY OF ROCKFORD, *et al*., | : | |
| | : | |
| Appellants, | : | |
| v. | : | Civ. No. 21-268-LPS |
| | : | |
| MALLINCKRODT PLC, *et al.,* | : | |
| | : | |
| Appellees. | : | |

**MEMORANDUM**

## I.    INTRODUCTION

Pending before the Court is an appeal (D.I. 1) by appellants, the Acthar Plaintiffs,[1] from

the Bankruptcy Court's February 16, 2021 Order (B.D.I. 1394) (APP459-62)[2] ("Retention

Order"), entered in the chapter 11 cases of debtor Mallinckrodt plc and certain of its affiliates

(together, "Debtors"), which approved the Debtors' decision to retain Arnold & Porter Kaye

Scholer LLP ("Arnold & Porter" or "A&P") as special counsel under 11 U.S.C. § 327(e) "*nunc*

---

[1] The "Acthar Plaintiffs" consist of the following: the City of Rockford ("Rockford"), Steamfitters Local Union No. 420 ("Steamfitters Local 420"), the International Union of Operating Engineers Local 542 ("IUOE Local 542"), United Association of Plumbers & Pipefitters Local 322 of Southern New Jersey ("Plumbers Local 322"), and Acument Global Technologies ("Acument"), individually and on behalf of the classes of third-party payors ("TPPs") and their beneficiaries that Rockford, Steamfitters Local 420, and Plumbers Local 322 seek to represent in their respective cases currently pending in federal district courts in the Northern District of Illinois, the Eastern District of Pennsylvania, and the District of New Jersey, respectively.

[2] The docket of the Chapter 11 cases, captioned *In re Mallinckrodt, plc, et al*., No.  20-12522-JTD (Bankr. D. Del.), is cited herein as "B.D.I. __."  The appendices filed in support of Acthar Plaintiffs' opening brief (D.I. 10) and the Debtors' answering brief (D.I. 13), are cited herein as "APP__."

*pro tunc"* to the petition date.  Acthar Plaintiffs challenge the sufficiency of Arnold & Porter's

disclosures, as well as the *nunc pro tunc* nature of the relief, arguing that a recent Supreme Court

decision – *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696 (2020)

(per curiam) – overruled Third Circuit precedent giving bankruptcy courts discretion to grant

such relief.  For the reasons that follow, the Court will affirm the Retention Order.

## II.    BACKGROUND

Prior to the chapter 11 cases, Debtors engaged Arnold & Porter for legal representation

that included FDA regulatory and healthcare compliance, antitrust counseling, and antitrust,

shareholder derivative, and other litigation.  (APP349-50, 41)  Since 2019, Arnold & Porter has

been counsel to Debtors on cases relating to the distribution, pricing, and marketing of Acthar®

Gel, including litigation initiated by Acthar Plaintiffs.  (APP349-50, 415)  On October 12, 2020

("Petition Date"), Debtors filed their chapter 11 petitions in the Bankruptcy Court.

### A.    Ordinary Course Professionals Motion

Two days after the Petition Date, on October 14, 2020, Debtors filed a motion (APP1-38)

("OCP Motion") seeking authorization to retain certain ordinary course professionals ("OCPs"),

including Arnold & Porter.  (APP28)  The OCP Motion set forth the reasons these professionals

were essential for Debtors to continue their normal business activities and further their chapter

11 cases.  (APP12)  The OCP Motion asserted that failure to retain the OCPs would severely

hinder Debtors' efforts, as there was a significant risk that OCPs would be unwilling to provide

services or would suspend services without a court order authorizing retention.  (APP12)

Accordingly, Debtors sought authorization to retain the OCPs *nunc pro tunc* to the Petition Date

(i.e., two days before the OCP Motion was filed) for professionals who had been engaged

prepetition, like Arnold & Porter.  (APP7)  The OCP Motion proposed a retention procedure

under which each OCP was required to submit a "Declaration of Disinterestedness" certifying

that the OCP "does not represent or hold any interest adverse to the Debtors or their estates with respect to the matter(s) on which the professional is to be employed."  (APP6-7; *see also* APP35-38 (form Declaration of Disinterestedness attached to the OCP Motion))  The OCP Motion also included payment caps.  For Arnold & Porter, and subject to exceptions not relevant here, "such fees and expenses . . . [could] not exceed an average of $150,000 per month over a rolling three-month period."  (APP8-9)  Incurred fees and expenses could be paid "without formal application" and would be memorialized in periodic payment summaries filed with the Bankruptcy Court.  (*Id*.; APP23-24)  The OCP Motion and proposed order recognized the possibility of payments "becom[ing] subject to court approval" "if such payments exceed the Cap Amounts."  (APP9; APP24-25)  In the OCP Motion, Debtors noted that "[a]lthough the automatic stay and other issues in these cases may decrease the Debtors' need for the services of certain Ordinary Course Professionals, the Debtors cannot now quantify or qualify their needs." (APP4)  Acthar Plaintiffs did not file any objections to the OCP Motion.

**B.    Ordinary Course Professionals Order**

On November 10, 2020, the Bankruptcy Court entered the Order (APP100-08) ("OCP Order"), which provided for retention *nunc pro tunc* to the Petition Date and gave each OCP that had already commenced postpetition services for Debtors 30 days to file the required declaration. (APP102)  In compliance with the OCP Order, Arnold & Porter promptly filed a declaration by partner Michael B. Bernstein on November 25, 2020.  (APP133-36)  Bernstein specified that the services the firm would provide were "(1) litigation services relating to antitrust, shareholder derivative, and other claims regarding Acthar; (2) antitrust counseling related to distribution and pricing; and (3) FDA regulatory and healthcare compliance counseling."  (APP135)  Bernstein further declared that no "principal, partner, director or officer of, or professional employed by, the Firm . . . holds or represents any interest adverse to the Debtors or their estates with respect

to the matter(s) upon which the Firm is to be employed" and stated that while the firm may perform services for "persons that are parties in interest in these chapter 11 cases," Arnold & Porter "does not perform services for any such person in connection with these chapter 11 cases with respect to the matter(s) upon which the Firm is to be retained."  (APP134-35)  Bernstein disclosed that "Debtors owe the Firm $16,024.31" in outstanding prepetition fees and expenses and recognized that payment of this debt was "subject to the limitations contained in the Bankruptcy Code" and that "the Firm may be required to waive" those fees.  (APP135-36)

On December 3, 2020, Acthar Plaintiffs filed an Omnibus Objection to Retention of "Ordinary Course Professionals" by Debtors.  (APP137-72)  Acthar Plaintiffs did not challenge the *nunc pro tunc* aspect of the relief.  Rather, Acthar Plaintiffs argued (among other things) that retaining the OCPs would not "benefit . . . the estate" because the OCPs' "services are not needed at this time," due to the fact that "litigation pending against the Debtors is stayed." (APP139-41)  Acthar Plaintiffs also argued that the OCPs were not retained "in the 'ordinary course' of their business" and had not filed adequate disclosures.  (APP145-57)  Acthar Plaintiffs later filed a Second Omnibus Objection, raising substantially the same arguments.  (APP189-207)  The Bankruptcy Court scheduled a hearing on the objections for February 25, 2021. (B.D.I. 1382 at 3)

### C.    Section 327(e) Special Counsel Application

Prior to the hearing on the pending objections to the OCP Order, Debtors filed an application to employ and retain Arnold & Porter as special counsel to the Debtors *nunc pro tunc* to the Petition Date.  (APP327-418) ("Application")  Section 327(e) allows a debtor to seek court approval to retain special counsel when doing so would be in the best interest of the estate, the attorney previously represented the debtor, and the attorney does not hold any interest "adverse to the debtor or to the estate with respect to the matter on which such attorney is to be

4

employed." 11 U.S.C. § 327(e). The Application explained that, due to new developments in the chapter 11 cases, Arnold & Porter would regularly incur fees and expenses in excess of the payment cap established in the OCP Order. (APP330-32) Among the reasons given for this likelihood was the "[a]ctive litigating by the Acthar Plaintiffs of myriad issues in these chapter 11 cases" including "the filing of numerous motions." (APP454-55)

Debtors argued that Arnold & Porter was well qualified to serve as special counsel under § 327(e) and that retention would be in the best interest of the Debtors' estates, creditors, and other parties in interest. (APP332) The Application identified the interruption and duplicative cost that would result if Debtors had to obtain substitute counsel. (APP331-32) Debtors argued *nunc pro tunc* relief was appropriate, citing the Bankruptcy Court's prior grant of *nunc pro tunc* relief under the OCP Order and the fact that the Application was filed because of developments beyond Debtors' control that would require Arnold & Porter to incur fees and expenses in excess of the fee cap. (APP338)

In support, Debtors attached another declaration from Bernstein. (APP347-412) As to the $16,026.31 that Debtors owed Arnold & Porter as of the petition date for unpaid prepetition services, Bernstein "confirm[ed] that A&P will be waiving this prepetition amount in its entirety." (APP353) The declaration stated that Bernstein "do[es] not believe there is any connection or interest . . . between A&P and (i) the U.S. Trustee or any person employed by the U.S. Trustee" or "(ii) any counsel, accountants, financial consultants and investment bankers who represent or may represent claimants or other parties in interest in the Debtors' chapter 11 cases, except as otherwise described herein." (APP353) The declaration noted that "A&P appears in cases, proceedings and transactions involving many different attorneys [and other advisors], some of which now or may in the future represent claimants and parties in interest in the Debtors' chapter 11 cases," "A&P has not represented and will not represent any such

entities in relation to the Debtors and their chapter 11 cases, nor does A&P have any relationship with any such entities that would be adverse to the Debtors or their estates in the matters upon which A&P is to be employed in these cases." (*Id*.) The declaration detailed the procedures the firm had followed to identify connections and potential conflicts and attached extensive schedules, listing the interested parties that Arnold & Porter had searched in its conflict database and the entities from that schedule the firm represented in the last five years. (APP351-52; APP358-89 (Sch. 1 – Potential Parties in Interest); APP390-405 (Sch. 2 – Current Clients); APP406-12 (Sch. 3 – Former Clients)) The declaration also disclosed the firm's rates and compensation arrangement with Debtors. (APP354-57) It further stated: "[f]or the 90 days prior to the Petition Date, A&P received payments in the total amount of $3,609,155.43 in connection with the Debtors' prepetition billing arrangement with A&P." (APP356)

Debtors also attached a declaration from Stephen A. Welch, the Chief Transformation Officer of Mallinckrodt plc. (APP413-18) Welch explained that Debtors first engaged Arnold & Porter in March 2018, in relation to the Acthar litigation, other litigation, and FDA regulatory and compliance matters. (APP415) Welch explained that Arnold & Porter was "well-qualified and uniquely situated to represent the Debtors as special counsel related to regulatory, antitrust and litigation matters in these chapter 11 cases in an efficient and effective manner" and that Arnold & Porter "has gained significant knowledge regarding the Debtors' business and the matters with respect to which the Debtors are seeking to retain A&P." (APP415-16) Welch confirmed that "the Debtors and Arnold & Porter determined that A&P regularly will incur fees and expenses in excess of the [payment cap]" and that, "[b]ased on this determination, the Debtors concluded that it would be in the best interests of the Debtors' estates, creditors, and other parties in interest to retain A&P pursuant to the Application." (APP415-16) Arnold & Porter subsequently filed additional disclosures, including a February 8, 2021 supplemental

declaration from Bernstein.  (APP442-446; APP438-41)

Acthar Plaintiffs filed objections challenging the form and adequacy of the disclosures. They further argued that *nunc pro tunc* relief was not warranted under Third Circuit precedent. Finally, in a footnote, they asserted that Arnold & Porter's $16,026.31 claim for prepetition fees and expenses constituted a conflict.  (APP419-31)

### D.  Hearing and Retention Under § 327(e)

On February 11, 2021, the Bankruptcy Court held a hearing on the Application to retain Arnold & Porter under § 327(e).  (APP463-543)  Welch and Bernstein were cross-examined by Acthar Plaintiffs.  (APP483-519 (Welch); APP520-41 (Bernstein))  Bernstein explained that the Application was filed because of "the rate cap" and "the fact that . . . the level of work was going to be more, given sort of what the debtor had seen in the bankruptcy action of what issues would come up and where they would need our expertise to support them on the influx of the Acthar Plaintiffs' claims."  (APP523)  Welch testified to the same effect.  (APP513-14)

At a hearing the following day (APP544-85), counsel delivered closing arguments, and Debtors reiterated that Acthar Plaintiffs were the reason why Debtors needed continued advice from Arnold & Porter to such an extent that it justified retention as special counsel under § 327(e).  (APP553)  For the first time, Acthar Plaintiffs raised the Supreme Court's decision in *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696 (2020) (per curiam).  (APP574-75)  Although counsel for Acthar Plaintiffs acknowledged that *Acevedo* "goes to jurisdiction," conceded that "nunc pro tunc . . . has been the custom and practice in this jurisdiction for a long time," and admitted that he had himself "filed thousands, probably hundreds of motions at least nunc pro tunc throughout the course of my career," Acthar Plaintiffs argued that the Supreme Court had now overruled that established precedent and practice. (APP559, 574)

7

In its bench ruling granting the Application, the Bankruptcy Court held that Debtors had satisfied all of § 327(e)'s requirements.  The Bankruptcy Court found that Arnold & Porter had "represented the debtor previously."  (APP581)  The Bankruptcy Court further found, "based on the evidence that was presented during the [February 11] hearing," that "it is in the best interest of the estate to allow Arnold & Porter to give advice to the debtors on . . . [the] issues that they're being retained for," including issues related to the Acthar litigation, which "Arnold & Porter was involved intimately in . . . prepetition" and which "have become prominent in this case and will continue to be prominent."  (APP581-82)  The Bankruptcy Court also found, "again, based on the record, that there is no adverse interest that Arnold & Porter holds that relates to the matter for which they are being employed."  (APP582)  Finally, the Bankruptcy Court held that *nunc pro tunc* relief was warranted.  (APP582-83)  The Bankruptcy Court rejected the Acthar Plaintiffs' reliance on *Acevedo*, holding that the Supreme Court's decision was "limited in its scope" and dealt with use of "a nunc pro tunc order to create jurisdiction where jurisdiction did not previously exist."  (*Id.*)  On February 16, 2021, the Bankruptcy Court entered the Retention Order, granting the Application.  (APP459-62)

### E.    Appeal

Acthar Plaintiffs timely appealed the Retention Order.  (D.I. 1)  The merits of the appeal are fully briefed.  (D.I. 9, 12, 14)  No party requested oral argument.  The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.

## III.    JURISDICTION AND STANDARD OF REVIEW

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees."  A bankruptcy court has "considerable discretion in approving

. . . retention under the standards of section 327 in light of the specific facts and circumstances of the case." *Century Indem. Co. v. Boy Scouts of Am. (In re Boy Scouts of Am.)*, 2021 WL 1820574, at *5 (D. Del. May 6, 2021). A bankruptcy court's decision on a § 327(e) application "is reviewed for abuse of discretion." *Phila. Newspapers, LLC v. Off. Comm. of Unsecured Creditors*, 408 B.R. 585, 596-97 (E.D. Pa. 2009) (citing *Staiano v. Pillowtex, Inc. (In re Pillowtex, Inc.)*, 304 F.3d 246, 250 (3d Cir. 2002)). "An abuse of discretion exists where the . . . court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* at 597 (internal quotation marks omitted). "A decision to grant *nunc pro tunc* approval is in the discretion of the bankruptcy court, and is reviewed for abuse of discretion only." *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 103 (3d Cir. 1988) (citation omitted).

## IV.   DISCUSSION

### A.   The Application Satisfied the Requirements of Section 327(e)

To approve the appointment of special counsel under section 327(e), the Bankruptcy Court was required to find that: "(1) the representation is in the best interest of the estate, (2) the attorney represented the debtor in the past, (3) the attorney is for a specific purpose approved by the court, other than to represent the debtor in conducting the case, [and] (4) the attorney does not represent or hold an interest adverse to the debtor or the debtor's estate" with respect to the matter on which the attorney is to be employed. *Stapleton v. Woodworkers Warehouse, Inc. (In re Woodworkers Warehouse, Inc.)*, 323 B.R. 403, 406 (D. Del. 2005); *see also* 11 U.S.C. § 327(e).

Acthar Plaintiffs make no argument as to the first three requirements of the statute, and the Bankruptcy Court correctly found they were satisfied here. "[B]ased on the evidence that was presented during the [February 11] hearing," the Bankruptcy Court found that retaining

Arnold & Porter was "in the best interest of the estate" and that Arnold & Porter had "represented the debtor previously." (APP581) Additionally, the specific purpose and tasks for which Arnold & Porter was being retained were clearly delineated, and were separate and not duplicative of the services performed by general bankruptcy counsel. (APP332-33, APP336; APP350-51) These findings find ample support in the record.

Acthar Plaintiffs' arguments touch only on the fourth "adverse interest" requirement of § 327(e). The Bankruptcy Court's findings in this regard were also supported by the record, including the Bernstein and Welch declarations. The Bernstein declaration presented unrebutted evidence that there was no "connection or interest . . . between A&P" and "the U.S. Trustee or any person employed by the U.S. Trustee" or claimants' or other parties in interest's "counsel, accountants, financial consultants and investment bankers." (APP353) Bernstein declared that "A&P has not represented and will not represent any" attorneys, counsel, accountants, financial consultants and investment bankers, who now or may in the future represent claimants and parties in interest "in relation to the Debtors and their chapter 11 cases," and that Arnold & Porter does not "have any relationship with any such entities that would be adverse to the Debtors or their estates in the matters upon which A&P is to be employed in these cases." (*Id.*) The Bernstein declaration further detailed the procedures his firm had followed to identify potential conflicts. (APP351-52; APP358-89; APP390-405; APP406-12) These disclosures are unrebutted by any evidence cited by Acthar Plaintiffs.

Acthar Plaintiffs argue that Arnold & Porter failed to disclose certain required information, which left the Bankruptcy Court unable to properly assess whether there was any "conflict of interest" that would be "disqualifying" under § 327(e). (*See* D.I. 9 at 31-34; *id.* at 2, Statement of the Issues 3(i)) Acthar Plaintiffs focus on two specific items: (i) a "Statement of Work" signed in July 2020, and (ii) the "compensation paid within the 90 days prior to the

10

Petition Date for services provided pre-Petition date and to be provided post-Petition Date." (*Id*. at 31-32)  However, Acthar Plaintiffs later admit that all of this information was in fact disclosed.  (*Id*. at 34) (noting disclosure of all information prior to or at February 11, 2021 hearing)  The Statement of Work was disclosed before the February 11, 2021 hearing on the § 327(e) Application, and Acthar Plaintiffs extensively cross-examined Welch and Bernstein about that document at the hearing.  (*See* APP502-09, 512-13, 518-19, 528-31)  The Application also attached the Bernstein declaration, which disclosed the amount Arnold & Porter had received in the 90 days prior to the petition date.  (APP335, APP356)

Indeed, it is unclear what asserted disclosure violation Acthar Plaintiffs are raising on appeal other than an asserted delay in making the disclosures.  Acthar Plaintiffs' opening brief includes a litany of cases involving disclosure issues, but those cases are inapposite.  (*See* D.I. 9 at 32-34)  As Debtors correctly point out, most relate to a true failure to disclose, not a situation (like here) where all disclosures were made before the approval decision.[3]  The only cases cited that considered a delay in disclosure are distinguishable from these facts.[4]

---

[3] *See NNN 400*, 619 B.R. at 813; *DeAngelis v. Jacques H. Geisenberger, Jr., P.C. (In re Ressler Hardwoods & Flooring, Inc.)*, 2010 WL 2342497, at \*5-6 (Bankr. M.D. Pa. June 8, 2010); *In re Ramelah*, 2008 WL 5411072, at \*6 (Bankr. E.D. Pa. Oct. 14, 2008), *aff'd sub nom. Leinbach v. Reigle (In re Ramelah)*, 2009 WL 1213953 (E.D. Pa. May 5, 2009); *In re Source Enters., Inc.*, 2008 WL 850229, at \*12 (Bankr. S.D.N.Y. Mar. 27, 2008); *In re eToys, Inc.*, 331 B.R. 176, 191 (Bankr. D. Del. 2005*); In re Molten Metal Tech., Inc.*, 289 B.R. 505, 509 (Bankr. D. Mass. 2003); *In re Hot Tin Roof, Inc.*, 205 B.R. 1000, 1004 (B.A.P. 1st Cir. 1997); *In re BH & P, Inc.*, 949 F.2d 1300, 1317 (3d Cir. 1991); *cf. In re McDermott International, Inc.*, 614 B.R. 244, 255 (Bankr. S.D. Tex. 2020) (no failure to disclose at issue).

[4] *In re Universal Bldg. Prods.*, 486 B.R. 650, 658-61, 663-64 (Bankr. D. Del. 2010), involved inadequate disclosure of applicant's engagement in "improper practice" "of using others to solicit proxies to act at a committee formation meeting" in violation of ethics rules.  *In re Frascella Enters., Inc.*, 2006 WL 1530256, at \*6 (Bankr. E.D. Pa. Apr. 12, 2006), involved late "disclosures [that] still obfuscate the facts."

As Debtors correctly point out, all but two of the cases cited by Acthar Plaintiffs involve statutory provisions other than § 327(e).  Most of the cases cited in the opening brief involved § 327(a), which has a broader, more exacting conflict-of-interest standard than appointment of special counsel under § 327(e) and, accordingly, different disclosure requirements.  *See, e.g.*, *DeVlieg-Bullard, Inc. v. Natale (In re DeVlieg, Inc.)*, 174 B.R. 497, 503 (N.D. Ill. 1994) ("[S]ection 327(e) does not require that counsel be a 'disinterested person,' as section 327(a) does . . . ."); *Phila. Newspapers, LLC,* 408 B.R. at 597 n.14 ("Because the appointments of general counsel and special counsel are governed by separate Bankruptcy Code provisions, cases interpreting the appointment of general counsel under § 327(a) are inapplicable to an analysis of the appointment of special counsel under § 327(e).").

Acthar Plaintiffs cite only two cases addressing § 327(e).  In those cases, the bankruptcy court found that the undisclosed information revealed a disqualifying adverse interest.  *See In re NNN 400 Cap. Ctr. 16, LLC*, 619 B.R. 802, 814-15 (Bankr. D. Del. 2020) (firm failed to disclose fee-sharing arrangement with undisclosed third-party that created "a pecuniary interest adverse to the Debtors"); *Molten Metal*, 289 B.R. at 508-09, 512 (firm failed to disclose prepetition confidentiality agreement with debtor that created "a disqualifying adverse interest").  No similar facts are present here.  Fundamentally, Acthar Plaintiffs cite no case for the proposition that a professional may be disqualified because of (at most) a slightly delayed disclosure of information that provides more detail about a connection that had already been disclosed.

Acthar Plaintiffs argue that including Arnold & Porter in the initial OCP Motion was "an attempted end run around the disclosure requirements under Section 327(e)."  (D.I. 9 at 30; *id*. at 2, Statement of the Issues 3(ii))  This theory is contradicted, however, by the unrebutted evidence in the record.  Debtors included Arnold & Porter in the OCP Motion and only reversed course when they realized that Arnold & Porter would exceed the payment caps set in the OCP Order as

a result of new developments: namely, Acthar Plaintiffs' aggressive tactics in the bankruptcy proceedings.  (APP415; APP454-55; APP512-14, 523; APP553)[5]  The Bankruptcy Court credited this explanation – a finding that is not clearly erroneous.  (APP581-82)  Acthar Plaintiffs' speculation that Debtors were somehow attempting to avoid the disclosure requirements are devoid of record support.

Finally, Acthar Plaintiffs argue that "Arnold & Porter held an interest adverse to the estate based on the preference payments received and a *Pillowtex* analysis should have been conducted.  None was conducted and Arnold & Porter should have been disqualified."  (D.I. 9 at 35-36; *id*. at 2 (Statement of the Issues 4))  The Court concludes, instead, that *Pillowtex* does not apply here.[6]  *Pillowtex* is a § 327(a) case about the "disinterested" requirement that finds no analogue in § 327(e).  Moreover, the respective "adverse interest" requirements in the two sections differ.  As courts have recognized, having claims against the estate for unpaid prepetition professional fees does not amount to an "interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed" for purposes of § 327(e).  *See, e.g., DeVlieg, Inc.*, 174 B.R. at 503 ("[S]ection 327(e) . . . permit[s] counsel to have claims for prior fees."); *In re Potter*, 2009 WL 2922850, at *1 (Bankr. D.N.M. June 12, 2009) ("A pre-petition claim for unpaid professional fees arising from proposed special counsel's pre-petition representation of the Debtor does not disqualify such counsel from representing the trustee under 11 U.S.C. § 327(e)."); *In re EBW Laser, Inc*., 333 B.R. 351, 359 & n.3 (Bankr. M.D.N.C. 2005) (same); *In re Henlar, Ltd.,* 1997 WL 4567 at *1, 3-4 (E.D. La. Jan. 6, 1997) (same).

---

[5] Whether Arnold & Porter was ever "an ordinary course professional" (D.I. 9 at 31) has nothing to do with whether the Bankruptcy Court properly approved its retention under § 327(e).

[6] Accordingly, the Court need not consider Debtors' additional argument that the Acthar Plaintiffs waived the *Pillowtex* argument.  (*See* APP419-31)

As the Debtor correctly points out, the same holds true with respect to prepetition payments. Such claims or payments are relevant to whether general counsel has an interest adverse "to the estate" for § 327(a) purposes but, without more, are not relevant to whether special counsel has a qualifying adverse interest "with respect to the matter on which such attorney is to be employed" for § 327(e) purposes. *See DeVlieg*, 174 B.R. at 503 (explaining different adverse interest requirements). Indeed, prepetition claims or payments are expected for special counsel, as one statutory requirement is that counsel have previously represented the debtor. *See* 11 U.S.C. § 327(e).

Full disclosure was made prior to the Bankruptcy Court's entry of the Retention Order, and Acthar Plaintiffs have failed to identify any cognizable "adverse interest." Accordingly, the Court finds no error in the Bankruptcy Court's finding "that there is no adverse interest that Arnold & Porter holds that relates to the matter for which they are being employed." (APP582)

## B.    *Nunc Pro Tunc* Relief Was Not an Abuse of Discretion

The Acthar Plaintiffs challenge the Bankruptcy Court's decision to approve the retention *nunc pro tunc* to the Petition Date. Under controlling Third Circuit law, "bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power . . . [w]here equitable concerns weigh in favor of granting retroactive approval to enable deserving professionals to recover compensation for work actually done." *In re Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986). "[R]etroactive approval" may be granted if "prior approval would have been appropriate" and "the delay in seeking approval was due to hardship beyond the professional's control." *Id*. at 650; *see also F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 105 (3d Cir. 1988). Such "retroactive approval" is reviewed for abuse of discretion. *Arkansas Co.*, 798 F.2d at 650.

14

The default rule for bankruptcy courts in Delaware is that retention is effective "as of the date the motion was filed." Del. Bankr. L.R. 2014-1(b). Bankruptcy courts routinely authorize retroactive approval to the bankruptcy petition date,[7] and district courts and courts of appeals routinely affirm such approvals under an abuse of discretion standard.[8] Moreover, the Office of the U.S. Trustee's long-held position is that it will "not ordinarily object" if "retention applications" for "professionals" are "filed within 30 days of the petition date." *In re United Cos. Fin. Corp.*, 241 B.R. 521, 526 (Bankr. D. Del. 1999). Hence, as counsel for Acthar Plaintiffs has admitted below, *nunc pro tunc* relief "has been the custom and practice in this jurisdiction for a long time." (APP574)

The Bankruptcy Court was well within its discretion in following the established case law and finding retroactive approval appropriate here. There was no delay in seeking approval of Arnold & Porter as counsel. Debtors filed an application just two days after filing the bankruptcy petition. (APP1-38) The OCP Motion requested and the OCP Order granted *nunc pro tunc* relief (APP7; APP104), and no party objected to that aspect of the OCP Order. Both the OCP Motion and the OCP Order contemplated the possibility that the payments to Arnold & Porter would be "subject to court approval" if they consistently exceeded the OCP payment caps. (APP24-25; APP106) As the Debtors point out, that possibility became a reality with respect to Arnold & Porter when the Acthar Plaintiffs chose to actively litigate "myriad issues," including by "filing of numerous motions" in the bankruptcy proceeding (and, to date, numerous appeals). (APP454-55, APP581-82) When Debtors realized that the payment caps would routinely be exceeded, they promptly filed the § 327(e) Application. (APP327-418) Because these

---

[7] *See, e.g., In re Art Van Furniture, LLC*, 617 B.R. 509, 520 (Bankr. D. Del. 2020).

[8] *See, e.g., Boy Scouts of Am.*, 2021 WL 1820574, at *6-8; *Woodworkers Warehouse*, 323 B.R. at 405.

circumstances were "beyond the professional's control," *Arkansas Co.*, 798 F.2d at 650, the Bankruptcy Court was well within its discretion in following established case law and finding retroactive approval appropriate.

C.   **The Supreme Court's Recent Decision**
     **Does Not Overrule Third Circuit Precedent**

Acthar Plaintiffs argue that the Supreme Court's decision in *Acevedo* effectively overruled Third Circuit precedent and now categorically precludes bankruptcy courts from retroactively approving the retention of professionals.  The Court disagrees.

As the Debtors correctly note, *Acevedo* did not consider any issues of bankruptcy law.  In that case, the Archdiocese of San Juan asked the Supreme Court to grant review to decide "[w]hether the First Amendment empowers courts to override the chosen legal structure of a religious organization and declare all of its constituent parts a single legal entity subject to joint and several liability."  2019 WL 261628, *i (Jan. 14, 2019) (petition for certiorari).  The certiorari petition made no mention of *nunc pro tunc* relief; neither did the brief in opposition or the reply.  *See id.*; 2019 WL 461568 (Feb. 1, 2019) (brief in opposition); 2019 WL 1080897 (Mar. 6, 2019) (reply brief).

The Supreme Court then invited the Solicitor General to file a brief expressing the views of the United States, 139 S. Ct. 2765 (June 24, 2019), and that brief identified a potential jurisdictional defect, *see* 2019 WL 6715369, *18-19 (Dec. 9, 2019).  The Solicitor General explained that the injunction that was the subject of the certiorari petition had been entered by the Puerto Rico court at a time when the case had "been removed to federal court," after one of the parties had filed for Chapter 11 bankruptcy, "and had not yet been remanded," even though the bankruptcy case had been dismissed.  *Id.* at *4, 17.  While the "federal district court's remand order" had purported to apply "retroactively" to the dismissal date, there remained a "substantial

question whether" its "attempt to make its remand order retroactive could cure the defect in the jurisdiction of the" Puerto Rico court. *Id*. at \*18-19 (citation omitted). In explaining this jurisdictional defect, the Solicitor General noted the Supreme Court had previously stated that "federal courts have the power to enter '*nunc pro tunc*' orders only to ensure that the record 'reflect[s] the reality' of what occurred – not to 'make the record what it is not' or to 'make it appear that it took an action which it never took.'" *Id*. at \*18 (quoting *Missouri v. Jenkins*, 495 U.S. 33, 49 (1990)). Supplemental briefing in response to the amicus brief included no substantive discussion of the *nunc pro tunc* issue. *See* 2019 WL 7212350 (Dec. 20, 2019) (supplemental brief for respondents); 2019 WL 7212349 (Dec. 23, 2019) (supplemental brief for petitioners).

Based on the jurisdictional defect, the Supreme Court vacated the Puerto Rico decision. *See Acevedo*, 140 S. Ct. at 697, 701. The Supreme Court explained that the removal to federal court had stripped the Puerto Rico court of jurisdiction, and the orders on appeal had been issued before the federal court remanded the case. *See id*. at 700. The Supreme Court agreed with the Solicitor General that calling the remand order "*nunc pro tunc*" could not create jurisdiction where none in fact existed. *See id*. As the Supreme Court further explained, "[f]ederal courts may issue *nunc pro tunc* orders, or 'now for then' orders, . . . to 'reflect . . . the reality' of what has already occurred . . . . 'Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court.' . . . . Put colorfully, '[n]unc pro tunc orders are not some Orwellian vehicle for revisionist history – creating 'facts' that never occurred in fact.'" *Id*. at 700-01 (citations omitted). Based on this language, Acthar Plaintiffs assert that the Supreme Court has suddenly declared that bankruptcy courts have no authority to retroactively approve retention of professionals. The Court is not persuaded.

The Court agrees, instead, with the Bankruptcy Court that *Acevedo*'s limited discussion of *nunc pro tunc* orders is specific to jurisdiction.  (*See* APP582 (*Acevedo* inapplicable where relief "is not creating jurisdiction in this court"); APP582-83 (*Acevedo* is "limited in its scope" and dealt with use of "a *nunc pro tunc* order to create jurisdiction where jurisdiction did not previously exist"))  The defect in *Acevedo* was jurisdictional, and the Solicitor General's discussion (which the Supreme Court adopted) was limited to jurisdiction.  The three cases the Supreme Court cited likewise involved jurisdiction.[9]  Consistent with this view, the Third Circuit has recognized the same "well-established rule that jurisdictional prerequisites cannot be circumvented by equitable considerations" and a lower court thus may not "bas[e] its finding of jurisdiction on the grant of *nunc pro tunc* relief."  *Gutierrez v. Gonzales*, 125 F. App'x 406, 412-13 (3d Cir. 2005).  Other courts, too, have understood *Acevedo* as simply reiterating the well-understood distinction between a court "creat[ing] jurisdiction where none exists" and granting retroactive relief on equitable grounds when the court indisputably has jurisdiction to act.  *See Merriman v. Fattorini (In re Merriman)*, 616 B.R. 381, 391 (B.A.P. 9th Cir. 2020); *see also, e.g., In re Hunanyan*, 2021 WL 2389273, at *2 (Bankr. C.D. Cal. June 10, 2021) ("*Acevedo* does not change the existing authority of the court to approve employment that has commenced before the motion was brought."); *In re SS Body Armor I, Inc.,* 2021 WL 2315177, at *3 (Bankr. D. Del. June 7, 2021) ("*Acevedo* does not prohibit courts from entering *nunc pro tunc* orders where there

---

[9] *See Missouri*, 495 U.S. at 49 (finding that *nunc pro tunc* order did "reflect[] the reality of the action" in context of triggering 90-day jurisdictional deadline for filing petition for certiorari); *Cuebas y Arredondo v. Cuebas y Arredondo*, 223 U.S. 376, 389 (1912) (court could not "enter a decree as of a day before [party's] death" in order "to confer jurisdiction against [decedent] as a sole defendant"); *United States v. Gillespie*, 666 F. Supp. 1137, 1139 (N.D. Ill. 1987) (indictment that was void as "having been the product of a grand jury acting without legal authority" because statutory term had expired could not be made valid by *nunc pro tunc* order).

are no jurisdictional defects."). The *Acevedo* decision does not effect the drastic change in law the Acthar Plaintiffs contend.

As the Third Circuit explained in *Gutierrez*, *nunc pro tunc* "allows a court sitting in equity to deem an action to have been taken as of a time when it should have been taken, but was not due to circumstances not attributable to the laches of the parties." 125 F. App'x at 411 n.7 (citing *Mitchell v. Overman*, 103 U.S. 62, 65 (1881)). "A court may generally grant *nunc pro tunc* relief 'as justice may require, in view of the circumstances of the particular case.'" *Id*. (quoting *Mitchell*, 103 U.S. at 65). The Court agrees that the type of *nunc pro tunc* relief at issue here falls comfortably within those traditional, equitable confines.

The Court disagrees with the Acthar Plaintiffs' claim that, after *Acevedo*, bankruptcy courts have refused to approve retention of professionals "to obtain retroactive effect." (D.I. 9 at 8) Of the 13 cases cited by Acthar Plaintiffs' in their lengthy string cite, only three involved the approval of professionals. While those cases disagreed with the use of "*nunc pro tunc*" orders after *Acevedo*, none held that *Acevedo* precludes retroactive compensation.[10]

_____

[10] In *In re Benitez*, the district court recognized that "'*[n]unc pro tunc* retentions' are common practice in bankruptcy matters largely resulting from the statutory framework for compensation of estate professionals set forth in sections 327 and 330," as "the delay between commencement of services to the estate, the filing of a motion for court approval and the entry of the order approving the retention may take several weeks." 2020 WL 1272258, at *1 (Bankr. E.D.N.Y. Mar. 13, 2020). Far from barring compensation for pre-approval work, that court held that "*nunc pro tunc* or retroactive retention is not necessary" because "there is no *per se* prohibition, in the statute or precedential caselaw, against awarding reasonable compensation to an estate professional for actual and necessary services rendered to the estate prior to the date of court approval of retention." *Id*. at *5 (holding that bankruptcy court may "award[] reasonable compensation to an estate professional for actual and necessary services rendered to the estate prior to the date of court approval of retention"). The Court in *In re Roberts* reached the same conclusion. 618 B.R. 213 (Bankr. S.D. Ohio 2020). The court there explained that, although "the use of *nunc pro tunc* orders to retroactively seek employment of professionals is an improper use of the mechanism," that "does not mean that services rendered prior to entry of an order authorizing the employment will be uncompensated," since "applicable bankruptcy statutes and rules laying the foundations for employment and compensation do not require employment to be authorized prior to performance of services." *Id*. at 217. Similarly, the court in *In re*

19

The Honorable Mary F. Walrath has similarly distinguished *Acevedo*, noting: "There are many instances in bankruptcy . . . not only [Bankruptcy] Rule 6003, but many instances where because of the notice requirements the Court is unable to enter an order on no notice and will allow any relief to be *nunc pro tunc* to the filing of the retention application."  (APP717 (*In re Hertz Corp.*, No. 20-11218 (Bankr. D. Del.), 12/28/20 Hr'g Tr. at 61:11-15))  Indeed, with respect to § 327(e) in particular, retroactive compensation is not only permissible – it is practically required.  "The concept of retroactive compensation is incorporated into the Federal Rules of Bankruptcy Procedure," including "Bankruptcy Rule 6003(a), [under which] an application for employment may not be approved within the first 21 days of a bankruptcy case, absent a need to avoid immediate and irreparable harm."  *In re Miller*, 620 B.R. 637, 642 (Bankr. E.D. Cal. 2020); *see also* Del. Bankr. L.R. 2014-1(b) (requiring "at least twenty-one (21) days' notice" before hearing on retention motion).

The Acthar Plaintiffs' expansive reading of *Acevedo* as a categorical bar on any retroactive approval of professional services under § 327(e) is in substantial tension with Bankruptcy Rule 6003.  *See Miller,* 620 B.R. at 642-43 ("Nothing in *Acevedo* suggests the Supreme Court intended to undermine the vitality of Bankruptcy Rule 6003(a).").

## V.    CONCLUSION

There is no error in the Bankruptcy Court's finding that the Application met the requirements of § 327(e), and the Bankruptcy Court did not abuse its discretion in granting retroactive compensation in connection with Arnold & Porter's retention.  For the foregoing reasons, the Retention Order will be affirmed.  An appropriate Order follows.

---

*Grinding Specialists, LLC* approved employment of counsel and made such employment "effective as of the date the request to employ was presented to, and could have been acted on, by the Court."  625 B.R. 6, 15 (Bankr. D.S.C. 2021).

March 28, 2022                     HONORABLE LEONARD P. STARK
Wilmington, Delaware            UNITED STATES CIRCUIT JUDGE